## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREDDIE FRANCIS, JR.,** | : | **CIVIL NO. 3:14-cv-1248** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **B. FULLER,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Plaintiff Freddie Francis, Jr. ("Francis" or "Plaintiff"), at all times relevant a federal inmate incarcerated at the United States Penitentiary at Canaan ("USP-Canaan"), Waymart, Pennsylvania, commenced this <u>Bivens</u>[1] action action on June 30, 2014.  (Doc. 1).  Named as defendants are the following individuals:  Correctional Officer B. Fuller ("Fuller"), Correctional Officer M. Kubicki ("Kubicki"), SIS Officer E. Hayden ("Hayden"), Warden D. Ebbert ("Ebbert"), Physician's Assistant R. Carey ("Carey")(improperly identified as Caley); Physician's Assistant E. DiMicco, ("DiMicco")(improperly named as "Dimmico"), Health Service Assistant J. Potope ("Potope"), Doctor B. Buschman ("Buschman"), Psychologist C. Heigel ("Heigel"), Doctor E. Santos ("Santos"), Nurse Waldman ("Waldman") (incorrectly named as

---

[1]<u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).  <u>Bivens</u> stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official."  <u>Butz v. Economou</u>, 438 U.S. 478, 504 (1978).

"Walman"), Registered Nurse S. Sholder ("Shoulder")( improperly identified as "Should"), Health Services Administrator K. Dewald ("Dewald"), and Health Services Assistant R. Parkyn ("Parkyn")( incorrectly identified as "Parkin").

Presently pending is Defendants' motion (Doc. 17) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), and for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons that follow, the motions will be granted in part and denied in part.

## I.      Motion to Dismiss

### A.      Standards of Review

A motion to dismiss pursuant to Rule 12(b)(1) contests the court's authority to hear and decide the case.  Federal courts are courts of limited jurisdiction; accordingly, every case begins with the presumption that the court lacks jurisdiction to hear it. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  The party invoking jurisdiction has the burden of demonstrating that subject matter jurisdiction exists.  See Thomson v. Gaskill, 315 U.S. 442, 446 (1942).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d

347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts

contained in the complaint, it "may also consider matters of public record, orders,

exhibits attached to the complaint and items appearing in the record of the case."  Oshiver

v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In

re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant

notice of what the . . . claim is and the grounds upon which it rests."  Phillips v. Cty. of

Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550

U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule

12(b)(6) motion, the court must conduct a three-step inquiry.  See Santiago v. Warminster

Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note

of the elements a plaintiff must plead to state a claim.'"  Id. (quoting Ashcroft v. Iqbal,

556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be

separated; well-pleaded facts must be accepted as true, while mere legal conclusions may

be disregarded.  Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir.

2009).  Once the well-pleaded factual allegations have been isolated, the court must

determine whether they are sufficient to show a "plausible claim for relief."  Iqbal,

556U.S. at 679 (citing Twombly, 550 U.S. at 555, 556) (requiring plaintiffs to allege facts

sufficient to "raise a right to relief above the speculative level").  A claim "has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## B.    Allegations of the Complaint

Francis states the facts of his claim as follows:  "Defendants, as each is addressed on the previous pages, was responsible for the neglect of the medical and phsyciatric [sic] care of the traumatized Petitioner, who, handcuffed and beaten correctional officers at USP Canaan [on November 5, 2015], the information of the assault was covered up by these individuals, as explained, the medical care to the Petitioner denied him.  The supervisors are named as direct-knowledge individuals, not *respondeat superior* claims." (Doc. 1, p. 6).

With respect to his claim that certain defendants used excessive force, Francis alleges that Defendants Fuller and Kubicki "participated in the assault upon the Petition on [November 5, 2012], while Petitioner was handcuffed," and that Defendants Hayden and Ebbert were "aware of the incident took no actions to either insure the safety of the Petition from further attacks by the Defendants, nor did [they] discipline the Defendants for their acts."  (Id. at 3).

As concerns the denial of medical treatment, he alleges that Defendants Buschman, Heigel, Santos, Waldman, and Sholder denied or failed to render proper medical care.  (Id. at 3, 4).  Defendants Carey and DiMicco allegedly ignored his injuries and perjured medical reports to cover up the source of his injuries.  (Id. at 3, 4). Defendant Potope refused to record the source of his injuries on medical forms,

Defendant Parkyn failed to correct errors made by staff and did not attend to his medical needs, and Defendant Dewald failed to correct her "wrongful medical staff" and denied him medical care and treatment.  (Id. at 4, 5).

## C. Discussion

A Bivens action is "the federal equivalent of the § 1983 cause of action against state actors."  Brown v. Philip Morris Inc., 250 F.3d 789, 800 (3d Cir. 2001); see also Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995) (*per curiam*) (noting that "federal courts have typically incorporated § 1983 law into Bivens actions" because "the two actions share the same practicalities of litigation.").  Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  See 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To establish a claim for relief under Bivens, a plaintiff must demonstrate: (1) that the conduct was committed by a federal actor, and (2) that conduct resulted in the deprivation of a right secured by the Constitution or federal laws of the United States.  See Brown, 250 F.3d  at 801.

1. <u>Official Capacity</u>

Defendants initially move pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss Francis's official capacity claims for lack of subject matter jurisdiction. (Doc. 20, p. 10). The United States is generally immune from suit absent an explicit waiver of sovereign immunity. <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980). This "immunity is jurisdictional in nature," <u>FDIC v. Meyer</u>, 510 U.S. 471, 475 (1994), and extends to government agencies and employees sued in their official capacities. <u>Antol v. Perry</u>, 82 F.3d 1291, 1296 (3d Cir. 1996). A plaintiff cannot proceed in a <u>Bivens</u> action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, <u>see</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 484–85 (1994), or against any of the individual defendants in their official capacities because an official capacity suit is simply another method of pleading an action against an entity of which an officer is an agent. <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (finding that a suit against a government officer in his or her official capacity is a suit against the government). Based on the above, the Court is compelled to dismiss Francis's official capacity claim against all Defendants for lack of subject matter jurisdiction.

2. <u>Personal Involvement</u>

Defendants seek dismissal of the <u>Bivens</u> claims lodged against Defendant Ebbert based on Francis's failure to allege sufficient personal involvement. (Doc. 20, p. 12-14). Individual liability will be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. <u>See</u> <u>Evancho v. Fisher</u>, 423 F.3d 347, 353

(3d Cir. 2005) (quoting <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1998)).  In

other words, defendants in Section 1983 civil rights actions "must have personal

involvement in the alleged wrongs . . . shown through allegations of personal direction or

of actual knowledge and acquiescence."  <u>Atkinson v. Taylor</u>, 316 F.3d 257, 271 (3d Cir.

2003); Rode, 845 F.2d at 1207-08.  When a plaintiff merely hypothesizes that an

individual defendant may have had knowledge of or personal involvement in the

deprivation of his or her rights, individual liability will not follow.  <u>Atkinson</u>, 316 F.3d at

271; <u>Rode</u>, 845 F.2d at 1207-08.

Francis alleges in his complaint that Ebbert "took no actions to either insure the

safety of the Petitioner from further attacks by the Defendants, nor did he discipline the

Defendants for their acts."  (Doc. 1, p.  p. 3).  In his accompanying memorandum, he

argues that "Defendant Ebbert's mindset should have been to oversee that his subordinate

Officers did their duties correctly, and when he was personally informed, to have

corrected and disciplined them for their acts."  (Doc. 2, p. 2).  Clearly, Francis seeks to

impose liability on Ebbert based solely on his supervisory role as the Warden at USP-

Canaan, and not based on his personal involvement in the underlying alleged

unconstitutional conduct.  Inasmuch as Francis's displeasure with Ebbert's failure to

"discipline the Defendants for their acts," arose out of Ebbert's role in the grievance

procedure, allegations that a prison official responded inappropriately to a complaint or

official grievance, does not establish that the official was involved in the underlying

allegedly unconstitutional conduct.  <u>See</u> <u>Rode</u>, 845 F.2d at 1207-08 (concluding that

7

after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006); see also Croom v. Wagner, No. 06-1431, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (finding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pennsylvania Dept. of Corr, No. 06-1444, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement). Hence, the claims against Defendant Ebbert will be dismissed.

### D.      Conclusion

Based on the foregoing, Defendants' motion to dismiss Francis's official capacity claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), will be granted. Defendants' motion to dismiss the claims lodged against Defendant Ebbert for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) will be granted.

## II.      **Motion for Summary Judgment**

### A.      **Standard of Review**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).

"[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id.; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); Wooler v. Citizens Bank, 274 F. App'x 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show

the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" Picozzi v. Haulderman, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

**B.      Statement of Material Facts**

1.      Exhaustion of Administrative Remedies

The Federal Bureau of Prisons ("BOP") Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for review of an issue which relates to any aspect of their confinement. (Doc. 19 , ¶1, citing 28 C.F.R. §542.10-542.19; Doc. 31, p. 9, #1). An inmate must initially attempt to informally resolve the issue with institutional staff before submitting a Request for Administrative Remedy. (Id. at 2, citing 28 C.F.R. §542.13(a); Id. at 2). If informal resolution fails an inmate may submit a formal written Administrative Request *via* a BP-9 form to the Warden within 20 days of the date on which the basis for the request

occurred.  (Id. at 3, citing 28 C.F.R. §542.14(a); Id. at 3).  The Warden has twenty days to respond.  (Id. at 4, citing 28 C.F.R. §542.18; Id. at 4).  An inmate who is dissatisfied with the Warden's response may submit an appeal using a BP-10 form to the Regional Director of the BOP within 20 days of the date the Warden signed the response.  (Id. at 5, citing 28 C.F.R. §542.15(a); Id. at 5).  The Regional Director has 30 calendar days to respond to the appeal.  (Id. at 7, citing 28 C.F.R. §542.18; Id. at 7).  If the Regional Director denies the appeal, the inmate may then appeal to the BOP's General Counsel within 30 days of the denial.  (Id. at 6, citing 28 C.F.R. §542.15(a); Id. at 6).  General Counsel has forty days to respond.  (Id. at 7, citing 28 C.F.R. §542.18; Id. at 7).

Francis successfully exhausted the administrative review process concerning the November 5, 2012 excessive use of force claim against Fuller, Kubicki, and Hayden.  (Id. at 8-11; Id. at 8-11).  Defendants contend that Francis failed to exhaust the administrative review process with respect to his claims that he was denied medical treatment after the November 5, 2012 incident.  (Doc. 19, p. 3, ¶12).  Francis disputes this statement offering that "there were several administrative remedies the Plaintiff had filed after the Nov. 5, 2012 incident," "one for Hepatitus C, one for the constant Headaches…suffered due to the excessive force used on Plaintiff by Defendants."  (Doc. 31, p. 10, #12, 13).

### 2. Excessive Use of Force Claim

Defendants offer the following version of the November 5, 2012 incident.  On November 5, 2015, Defendants Fuller, Kubicki and Hayden were conducting cell consolidations in the Special Housing Unit (SHU).  (Doc. 19, ¶¶ 14, 21, 28).  Defendant

Francis submitted to hand restraints to allow placement of inmate Lighting in his cell. (<u>Id.</u> at 14, 21, 29)  Francis became combative, began to threaten staff members, and refused to accept a cellmate. (<u>Id.</u> at 15, 23, 30).  As Lighting was placed in the cell, Francis attempted to kick Lighting.  (<u>Id.</u> at 16; 24, 31).  Defendant Fuller immediately intervened for the protection of Lighting and placed himself between the two inmates. (<u>Id.</u> at 17, 32).  Defendant Kubicki removed Lighting from the cell for his protection and placed him against the wall.  (<u>Id.</u> at 25).  Francis began kicking Fuller in the upper right leg.  (<u>Id.</u> at 18, 33).  Assistance was requested.  (<u>Id.</u> at 19).  Once additional staff members arrived, Kubicki secured Lighting in a nearby cell and then assisted Fuller in restraining Francis, who continued to be combative with staff.   (<u>Id.</u> at 26).  Fuller placed Francis on the floor of the cell.  (<u>Id.</u> at 19).  During the course of the incident Francis struck his head on the edge of the bed.   (<u>Id.</u> at 20; 27).  Once restrained, Defendant Kubicki escorted Francis to the medical department so that the head injury could be evaluated.  (<u>Id.</u> at 27).

BOP Program Statement 5566.06, Use of Force and Application of Restraints, authorizes BOP staff to apply physical restraints to an inmate when necessary to gain control of an inmate, to protect and ensure the safety of inmates, staff and others, or to prevent serious property damage.  (<u>Id.</u> at 36, 37).   On November 6, 2012, an "After Action Review Report" determined that "[t]he actions taken with respect to the use of force and/or restraints were reasonable and have been reviewed with staff involved."  (<u>Id.</u> at 35; Doc. 19-1, p. 100).

Francis largely disputes Defendants' version. He declares that prior to the November 5, 2012 incident, he filed a sexual harassment complaint against Counselor Compton, and that he was warned that "there was threat made on [his] life that if [he] ever went to that SHU that [he] would be 'dealt with' according to Counselor Compton." (Doc. 31, p. 27, ¶ 5).

He states that "on November 5th, 2012, Officer Fuller, Hayden and Kubicki, in Special Housing Unit, [SHU], at USP Canaan in Waymart, Pennsylvania, approached [his] cell on B Range with an inmate named Lighter. Once this inmate saw who [Francis] was, he told CO Fuller that [he] was not from the Midwest. He stated, 'that Dude is from the South.' Lighter refused to come into the cell with [him]." (Doc. 31, p. 27, ¶ 5). Lighter was struggling with Fuller, Kubicki and Hayden not to come in the cell. (Id.) Fuller hollered, "Oh, you kick me?" and then chased Francis into the cell and kicked him in the back. (Id.) He then "grabbed Petitioner by the back of his jumpsuit and slung [his] head into the bed post with a force so powerful [Francis] fell on [his] knees in a prayer position." (Id.) Kubicik and Hayden entered the cell and, rather than stop the assault, they "joined in with Fuller" in stomping, kicking and beating up Francis. (Id.) He states that during the incident "I was fully restrained on the ground (floor) with my hands behind cuffed in my back this is truth." (Doc. 31, p. 31).

### 3. Denial of Adequate Medical Care Claim

Francis was evaluated once he was removed from his cell by Defendant physician's assistant Carey. (Doc. 19, ¶ 38; Doc. 31, #38). Defendant Carey noted that

Francis had sustained an eight inch laceration to his right superior scalp during the incident. (Id. at 39, 40; Id. at 39). Defendant applied butterfly wound closures to the edges of the laceration and a compression dressing was applied before Francis was transferred to a local hospital for further additional treatment. (Doc. 19, ¶ 41). Defendant Carey documented that Francis was "unsure of cause of injury" and that he "was alone at time of trauma." (Id. at ¶¶ 42, 43; Doc. 31, #43). PA Kaiser examined Francis on November 6, 2012 after his return from the local hospital and noted that . ion, it was noted that Francis had sutures placed in the laceration on his scalp and was also found free of any erythema, drainage, or ecchymosis. (Id. at 44, 45; Id. at 44, 45). PA Kaiser removed the sutures on November 15, 2012. (Doc. 19, ¶ 46). No issues were noted during that examination. (Id. at 47).

### C. Discussion

#### 1. Excessive Use of Force

The use of force against an inmate, that involves the "unnecessary and wanton infliction of pain," violates the Eighth Amendment right to be free from cruel and unusual punishment. Graham v. Connor, 490 U.S. 386, 393–94 (1989); Whitley v. Albers, 475 U.S. 312, 319 (1986). "[T]he core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6–7 (1992)), citing Whitley,475 U.S. 312. Plaintiff does not have to demonstrate serious injury, although the extent of injuries suffered is a factor in determining whether the use of force was

necessary or not. <u>Hudson</u>, 503 U.S. at 7; <u>see also</u> <u>Brooks v. Kyler</u>, 204 F.3d 102, 104 (3d Cir. 2000) (holding that there is no fixed minimum quantum of injury that a prisoner must prove he suffered through either objective or independent evidence in order to state a claim for excessive force). Other factors considered in determining whether the use of force was wanton and unnecessary include "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' " <u>Hudson</u>, 503 U.S. at 7 (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 320–21 (1986)). Summary judgment is not appropriate if " 'it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain.' " <u>Brooks</u>, 204 F.3d at 106 (quoting <u>Whitley</u>, 475 U.S. at 322). Moreover, the law in this Circuit is also clear that a correctional officer who ignores a realistic opportunity to intervene in another officer's use of force violates a prisoner's constitutional rights. <u>Smith v. Mensinger</u>, 293 F.3d 641, 650–51 (3d Cir. 2002).

As is evident from the statement of material facts, *supra*, the parties advance vastly different versions of the events of November 5, 2012. Undisputed is that the incident began with Francis obeying Defendant Fuller's instructions to submit to behind the back hand restraints for the purpose of placement of a cellmate in his cell, and ended with Francis suffering a serious injury to his head that required transport to an outside hospitable. What transpired in the interim is largely in dispute. In a nutshell, Defendants

contend that Francis, who was single-celled at the time, became combative and threatened staff when they attempted to place Inmate Lighting in his cell. He attempted to kick Lighting, and succeeded in kicking Defendant Fuller in the upper right leg, thereby necessitating the use of force to protect both inmates and staff. Francis asserts that Inmate Lighting resisted entering his cell, and Defendant Fuller falsely claimed that Francis kicked him, and then gratuitously assaulted him while his hands were restrained behind his back. He also asserts that Kubicik and Hayden entered the cell and, rather than offering assistance, they "joined in with Fuller" in stomping, kicking and beating him. The differing versions go to the very heart of the use of force analysis. Defendants argue that the force was applied in a good faith effort to protect the inmates and staff involved and to restore order. Francis contends that the force was malicious and for the sole purpose of causing harm. There are clearly genuine issues of material fact in dispute and, when it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain, as is the case here, the entry of summary judgment is inappropriate. Hudson , 503 U.S. at 7. The Eighth Amendment excessive use of force claim against Defendants Fuller, Kubicki and Hayden will proceed to trial.

Alternatively, Defendants invoke the defense of qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v.

Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson, 555 U.S. at 231.  It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability."  Sharp v. Johnson, 669 F.3d 144, 159 (2012) (citing Pearson, 555 U.S. at 244).  Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity.  Giles v. Kearney, 571 F.3d 318, 325–26 (3d Cir. 2009).

The qualified immunity claim is traditionally, not mandatorily, analyzed in two steps.  Pearson, 555 U.S. 223; Saucier v. Katz, 533 U.S. 194, (2001).  First, the court must decide whether the facts alleged, taken in a light most favorable to the plaintiff, makes out the violation of a constitutional right.  Saucier, 533 U.S. 194.  Next, the court must examine whether the right at issue was "clearly established" such that a reasonable official would have known that his conduct was unlawful.  Id.  It has already been determined that Francis proffered sufficient evidence to defeat summary judgment on the excessive force claim.  The only issue is the certainty of the constitutional right at the time the violations occurred.  At the time of the incident in the matter *sub judice*, it was

clearly established that prisoners were protected from excessive force and wanton

beatings that exceed correctional officers' good-faith efforts to maintain discipline and

order.  See Hudson, 503 U.S. at 7; Whitley, 475 U.S. at 321.  It was also clear that a

correctional officer who ignores a realistic opportunity to intervene in another officer's

use of force violates a prisoner's constitutional rights.  Smith, 293 F.3d at 650–51.  When

considering reasonable inferences from the facts favorable to Francis, no reasonable

officer could have believed that this use of force and failure to prevent unwarranted

injury by others using excessive force was constitutional.  The Eighth Amendment case

law relating to the excessive use of force was sufficiently clear at the time of the events in

question such that a reasonable officer in the position of individual Defendants would

have understood that their conduct violated the Eighth Amendment.  Consequently, they

are not entitled to qualified immunity.

### 2. Inadequate medical care

Defendants seek an entry of summary judgment on the grounds that Francis failed

to fully exhaust his administrative remedies as required by 42 U. S. C. § 1997e(a) with

regard to his claim that Defendants Carey, DiMicco, Potope, Buschman, Heigel, Santos,

Waldman, Sholder, Dewald, and Parkyn denied him adequate medical care.  The Prison

Litigation Reform Act of 1996 (the "PLRA") "mandates that an inmate exhaust 'such

administrative remedies as are available' before bringing suit to challenge prison

conditions."  Ross v. Blake, 136 S. Ct. 1850, 1856 (2016);  see Nyhuis v. Reno, 204 F.3d

65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse

compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."). The text "suggests no limits on an inmate's obligation to exhaust– irrespective of 'special circumstances.'" Id. "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. See Miller v. French, 530 U.S. 327, 337, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")." Id. at 1856-57.

Significantly, "the PLRA contains its own, textual exception to mandatory exhaustion," i.e. the PLRA requires exhaustion of "available" administrative remedies. Id. at 1858. "Available" is defined as "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." Id. at 1858-59, quoting Booth v. Churner, 532 U.S. 731, 737-38 (2001). There are three instances in which administrative remedies are unavailable. "First, as Booth made clear, an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end–with officers unable or consistently unwilling to provide relief to aggrieved inmates." Id. at 1859. "Next an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id.

The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' " Id. at 93 (quoting Porter v. Nussle, 534 U.S. 516, 525 (2002).). The requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." Woodford, 548 U.S. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228–29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 211–212 (2007).

Finally, whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. See Small v. Camden County, 728 F.3d. 265, 268 (3d Cir. 2013); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010).

The PLRA requires Francis to pursue administrative relief prior to filing suit in federal court. Francis failed to file any administrative remedies regarding his alleged lack

of medical care.  In an attempt to excuse exhaustion, Francis argues that death threats

allegedly made by Fuller and Kubicki during the assault "would deter a reasonable

prisoner of ordinary firmness from pursuing the grievance process."  (Doc. 31, p. 24).

This argument is completely undermined and rendered meritless by the undisputed fact

that Francis fully exhausted his excessive use of force claim against Fuller and Kubicki.

See Milbrook v. United States, 8 F. Supp.3d 601, 612 (3d Cir. 2014).  Defendants are

therefore entitled to an entry of summary judgment on this claim.

### D.     Conclusion

Based on the foregoing, Defendants' motion for summary judgment pursuant to

Federal Rule of Civil Procedure 56 will be granted in part and denied in part.  The motion

will be granted with respect to the Eighth Amendment denial of medical care claim and

denied as to the Eighth Amendment excessive use of force claim against Defendants

Fuller, Kubicki, and Hayden.

## IV.    Conclusion

For the reasons set forth above, Defendants' motion to dismiss pursuant to Federal

Rule of Civil Procedure 12(b)(1) will be granted.  Defendants' motion to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6) will be granted.  And, Defendants'

motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 will be

granted in part and denied in part.

An appropriate Order will enter.

BY THE COURT:


s/James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court

Dated:      August 8, 2017